*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
April 28, 2022

Plaintiff-Appellee,

v

No. 354349
Kent Circuit Court
LC No. 19-000408-FH

JAMES HOWARD CHANCE,

Defendant-Appellant.

Before: CAMERON, P.J., and CAVANAGH and GADOLA, JJ.

PER CURIAM.

Following a jury trial, defendant James Howard Chance was convicted of being an accessory after the fact to a felony, MCL 750.505.[1] The trial court sentenced defendant to serve one year of probation and 30 days in jail. We affirm.

## I. BACKGROUND

This case arises out of defendant's son, Jared Chance, murdering the victim and mutilating her body. In a separate proceeding, Jared was convicted of second-degree murder, MCL 750.317, three counts of tampering with evidence, MCL 750.483a(6)(b), disinterment and mutilation, MCL 750.160, and concealing the death of an individual, MCL 333.2841(3).[2]

Jared murdered the victim in the early morning hours of November 29, 2018. He later dismembered the victim's body with an electric saw in his apartment in Grand Rapids, Michigan.

---

[1] "The crime of accessory after the fact is a common-law felony punishable under the catch-all provision of MCL 750.505. . . ." *People v Cunningham*, 201 Mich App 720, 722; 506 NW2d 624 (1993).

[2] This Court affirmed Jared's convictions and resulting sentences. *People v Jared Chance*, unpublished per curiam opinion of the Court of Appeals, issued January 14, 2021 (Docket No. 351400). Our Supreme Court denied leave. *People v Jared Chance*, 508 Mich 967; 965 NW2d 542 (2021).

-1-

Later that day, the victim's mother reported the victim as missing to law enforcement. The victim's mother also posted on Facebook and noted that the victim was last seen with Jared.

On the morning of December 1, 2018, Jared telephoned his mother and asked her to pick him up. Defendant, Jared's mother, and Jared's brother left their home in Holland, Michigan, and went to Jared's apartment in their Honda. They arrived at about 10:00 a.m. Jared's brother and Jared moved items from Jared's apartment into the Honda. Some of these items included a cardboard box that contained a black bag, an electric saw, a shower curtain, a garbage can, cleaning supplies, women's boots, and clothing.

By 10:30 a.m., the family left Jared's apartment and drove to the victim's vehicle, which was located nearby. Various items were removed from the victim's vehicle and put into the Honda.[3] The family then traveled to an apartment complex that had multiple dumpsters on its premises.[4] The family returned to Holland after stopping at a Costco in Grandville, Michigan. At some point, Jared told defendant, his mother, and his brother that the victim was dead and that he had "chopped [the victim] up" and placed some of her body parts "all over town" in different garbage receptacles.

On December 2, 2018, the family traveled to the Grand Rapids Police Department in the Honda, and defendant and Jared briefly spoke to Lieutenant Patrick Merrill at the front window. The victim was referenced, and defendant indicated that Jared would not speak to members of law enforcement without an attorney present. Jared left the police station. Defendant then indicated that he was a retired police officer and that Lieutenant Merrill would regret not speaking with Jared. When it was made clear that Jared would not be provided with an attorney because law enforcement was not investigating him at that time, defendant left the police station.

The family then went to Jared's apartment and unloaded items from the Honda. Defendant, Jared's mother, and Jared's brother returned to Holland. Jared stayed in Grand Rapids. Later that afternoon, Jared's neighbor discovered the victim's torso in the basement and contacted law enforcement. The victim's arms and legs were subsequently located in Jared's apartment in the black bag that had been inside the cardboard box. The victim's hands, feet, and head were not in the apartment and were never located. Other incriminating evidence was also located in the apartment. Jared was arrested and charged with the crimes outlined above.

On December 5, 2018, a search warrant was executed on the Holland home. An electric saw was located underneath a couch in the living room, and a plastic shower curtain was located in the garage. The victim's blood was on the saw and the shower curtain.

---

[3] It is unclear what items were removed from the victim's vehicle.

[4] Cell phone records support that a phone associated with Jared was in that area a short period of time after the murder.

On December 6, 2018, defendant's testimony was taken pursuant to an investigative subpoena. Defendant was later charged, in relevant part, with being an accessory after the fact.[5] Trial commenced in January 2020, and the prosecutor's theory was that defendant was an accessory after the fact because he had assisted Jared with concealing evidence of the victim's dismemberment. Defendant was convicted and was sentenced as described above. This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant argues that there was insufficient evidence to support his conviction. Specifically, defendant argues that "the prosecution failed to meet its burden in proving beyond a reasonable doubt that [defendant] had the specific intent to help Jared in avoiding discovery, arrest, trial or punishment for mutilation of a dead body." We disagree.

"We review de novo a challenge on appeal to the sufficiency of the evidence." *People v Henry*, 315 Mich App 130, 135; 889 NW2d 1 (2016) (quotation marks and citation omitted). "To determine whether the prosecutor has presented sufficient evidence to sustain a conviction, we review the evidence in the light most favorable to the prosecutor and determine whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt." *People v Smith-Anthony*, 494 Mich 669, 676; 837 NW2d 415 (2013) (quotation marks and citation omitted). "The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Bailey*, 310 Mich App 703, 713; 873 NW2d 855 (2015) (quotation marks and citation omitted). "Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *People v Smith*, 336 Mich App 297, 303; 970 NW2d 450 (2021) (quotation marks and citation omitted).

"An accessory after the fact is one who, with knowledge of the principal's guilt, renders assistance to hinder the detection, arrest, trial, or punishment of the principal." *People v King*, 271 Mich App 235, 239; 721 NW2d 271 (2006). The elements of the underlying offense, disinterment, mutilation, defacement, or carrying away of a human body, are that "the defendant (1) without any legal authorization to do so, (2) causes permanent damage to a portion of a dead body, defaces a portion of a dead body by marring its appearance, or removes or carries away from the whole a portion of a dead body." *People v Bass*, 317 Mich App 241, 271; 893 NW2d 140 (2016).

On November 29, 2018, Jared murdered and dismembered the victim. Jared's downstairs neighbor noticed a foul odor later that day. On the morning of December 1, 2018, Jared called his mother. The call lasted less than one minute. Defendant, Jared's mother, and Jared's brother immediately traveled to Grand Rapids. Defendant acknowledged that he entered Jared's apartment to alert him that they had arrived. Jared's brother could tell that something was "very wrong," and he suspected that Jared had committed a crime. Jared and Jared's brother loaded several items into the Honda, including the cardboard box that contained the victim's arms and legs, an electric saw

---

[5] Defendant was also charged with two counts of perjury, MCL 750.423, in relation to testimony that he gave in relation to the investigative subpoena. Defendant was acquitted of one count, and the jury was unable to reach a verdict on the remaining count.

and shower curtain that had the victim's blood on it, a garbage can, cleaning supplies, women's boots, and clothing.

Defendant testified Jared had them "drive all over" to locate the victim's vehicle, which contained items that Jared moved to the Honda. The family then traveled to an apartment complex that had multiple dumpsters outside. Importantly, a phone associated with Jared had been at this location the day before. That phone went off the network after the family arrived at this location, and the phone was never located by law enforcement. When the family arrived at the Holland home, Jared put clothing into the fire pit. The bloody saw was later located underneath the living room couch, and the bloody shower curtain was found in the garage.

Although defendant argues that he did not know that Jared had dismembered the victim until December 2, 2018, a rational trier of fact could conclude that defendant knew about the crime on December 1, 2018, given the evidence outlined above. Additionally, during a December 11, 2018 interview with Sergeant John Purlee, defendant indicated that Jared approached him on the morning of December 2, 2018, and indicated that he had done "something awful" to the victim. Defendant asked Jared if he had "cut her up," and Jared acknowledged that he had done "that." When asked by Sergeant Purlee what made defendant ask Jared if he had cut up the victim, defendant responded "I don't know." Importantly, defendant stated that he was "frightful" of the cardboard box, that he believed it contained "evidence," and that he wanted it out of the Honda. Based on this evidence, a rational trier of fact could infer that defendant knew that Jared had mutilated the victim's body before December 2, 2018, and that defendant had assisted in transporting the victim's limbs and other incriminating evidence from Grand Rapids to Holland.

Additionally, although defendant is correct that he brought Jared to the Grand Rapids Police Department on December 2, 2018, a rational trier of fact could find that this was done to provide defendant with additional time to dispose of the victim's remaining body parts and other incriminating evidence. Indeed, defendant testified that he brought Jared to the police station because there were "rumors" that Jared and the victim were missing. The evidence also does not support that defendant wanted Jared to be interviewed by law enforcement. Rather, after Lieutenant Merrill asked Jared when he had last seen the victim, defendant indicated that Jared required an attorney. This confused Lieutenant Merrill because Jared was not a suspect at that time. Indeed, law enforcement only had reason to believe that the victim was missing, not deceased. Defendant did not explain why it would be in law enforcement's best interest to obtain an attorney for Jared and to attempt to question him about the victim. Indeed, defendant only vaguely indicated that Lieutenant Merrill would regret his actions.

After leaving the police station, defendant returned incriminating evidence to Jared's sole possession, including the cardboard box. Defendant believed that the cardboard box contained "evidence," and he was "frightful of that box." While defendant asserted that he did not know what was in the box, defendant was aware on December 6, 2018, that the victim's hands and feet had not been located. When asked how he knew this, defendant could only state that he "inferred" this from statements Jared had made. The victim's hands and feet were not in the box, thereby supporting that defendant was aware that the box only contained the victim's arms and legs. Additionally, given that defendant knew that Jared had been disposing evidence, the jury could

reasonably infer that defendant intended for Jared to continue doing so after they returned to the apartment.[6]

Moreover, statements that defendant made at the conclusion of his December 6, 2018 interview were indicative of his intent to help Jared. When defendant was informed that he could not discuss the case with Jared or his other family members, defendant's initial response was "Are you serious? . . . I am not going to honor that. They are my family—my son and . . . my wife." Although defendant ultimately changed his answer when threatened with detention, defendant's initial refusal demonstrates his loyalty to his family and supports the inference that he helped Jared avoid detection. Viewing all the evidence in the light most favorable to the prosecution, we conclude that there was sufficient evidence to support defendant's conviction of being an accessory after the fact.

III. GREAT WEIGHT OF THE EVIDENCE

Defendant argues that he should receive a new trial because the great weight of the evidence failed to show that he committed the crime. We disagree.

Defendant did not move the trial court for a new trial. Therefore, we review defendant's great-weight argument for plain error affecting substantial rights. See *People v Cameron*, 291 Mich App 599, 618; 806 NW2d 371 (2011). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). An error has affected a defendant's substantial rights when there is "a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. Moreover, "once a defendant satisfies these three requirements, . . . [r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (quotation marks and citation omitted; second alteration in original). A defendant "bears the burden of persuasion with respect to prejudice." *Id*. at 763.

"[A] new trial based upon the weight of the evidence should be granted only where the evidence preponderates heavily against the verdict and a serious miscarriage of justice would otherwise result." *People v Lemmon*, 456 Mich 625, 642; 576 NW2d 129 (1998) (quotation marks and citation omitted). A verdict may be vacated only when it "does not find reasonable support in the evidence, but is more likely to be attributed to causes outside the record such as passion, prejudice, sympathy, or some extraneous influence." *People v DeLisle*, 202 Mich App 658, 661; 509 NW2d 885 (1993) (citation omitted).

---

[6] Defendant asserts that he left items on the back porch, thereby showing a lack of concern over possible detection. However, defendant testified that he saw Jared moving one of the boxes from the landing into his apartment. The jury could therefore infer that defendant expected Jared to do the same with the remaining items that were left outside.

Considering the evidence outlined above, we conclude that the evidence does not preponderate so heavily against the jury's verdict that it would be a miscarriage of justice to allow the verdict to stand. See *Lemmon*, 456 Mich at 642. Defendant's great-weight argument essentially consists of an attack on the sufficiency of the evidence and an implication that the defense's theory of the case was more credible. However, the evidence was sufficient to support defendant's conviction, and it was up to the jury to assess the weight and reliability of the evidence. *Id*. at 643-644. Because the jury's verdict is not against the great weight of the evidence, defendant has failed to establish plain error affecting substantial rights and is not entitled to relief.

## IV. PROSECUTORIAL ERROR

Defendant argues that he was denied a fair trial because the prosecutor misstated the law and improperly argued that defendant disposed of Jared's backpack. We disagree that defendant is entitled to a new trial.

"A prosecutor has committed [error] if the prosecutor abandoned his or her responsibility to seek justice and, in doing so, denied the defendant a fair and impartial trial." *People v Lane*, 308 Mich App 38, 62; 862 NW2d 446 (2014).

> A defendant's opportunity for a fair trial can be jeopardized when the prosecutor interjects issues broader than the defendant's guilt or innocence. Issues of prosecutorial [error] are decided case by case, and this Court must examine the entire record and evaluate a prosecutor's remarks in context. The propriety of a prosecutor's remarks depends on all the facts of the case. A prosecutor's comments are to be evaluated in light of defense arguments and the relationship the comments bear to the evidence admitted at trial. [*People v Dobek*, 274 Mich App 58, 63-64; 732 NW2d 546 (2007) (quotation marks and citations omitted).]

Defendant first argues that the prosecutor improperly argued that defendant disposed of Jared's backpack. Defendant did not object to the prosecutor's argument and request a curative instruction in the trial court, thereby rendering the issue unpreserved. See *People v Unger*, 278 Mich App 210, 234-235; 749 NW2d 272 (2008). Unpreserved issues regarding prosecutorial error are reviewed "for outcome-determinative, plain error." *Id*. at 235.

Evidence was presented that Jared brought a backpack into the Holland home on December 1, 2018. Defendant indicated that the backpack was "left" on the couch and that he "checked" the backpack "at one point." According to defendant, "[t]here was nothing in it." During closing arguments, the prosecutor referred to defendant's statement about the backpack and referenced a photograph that was taken of the couch before the search warrant was executed. The prosecutor then made the following argument:

> So [defendant] checked the pack, but . . . don't worry, there was nothing in it. . . . He had a backpack. Okay. It was on the couch. At one point, he left that there. I checked it, but there was nothing. What couch? It was on the love seat. He left that there. So, Jared leaves the backpack in Holland. And the defendant,

who really didn't want to look at anything else,[7] looked in the backpack. Don't worry, ladies and gentlemen, nothing was in it.

Where the hell is the backpack? That's the couch before they started moving it around. Where the hell is the backpack? If there's nothing in it, why is it gone?

It is well settled that "[a] prosecutor may not make a factual statement to the jury that is not supported by the evidence. . . ." *Dobek*, 274 Mich App at 66 (citations omitted). In this case, there is no evidence that the backpack contained anything and there is no evidence that defendant disposed of Jared's backpack. It is also unclear whether Jared left the backpack in Holland when he returned to Grand Rapids. Indeed, defendant only indicated that Jared "left" the backpack on the couch. This evidence could support that defendant left the backpack unattended while he was at the Holland home on December 1 or December 2, 2018.

To the extent that Jared left the backpack in Holland when he returned to Grand Rapids, there is no indication that the backpack was not present when the search warrant was executed on the Holland home. Indeed, members of law enforcement only provided testimony about evidence more relevant to the murder, such as the bloody saw and shower curtain. The prosecutor did not ask members of law enforcement whether a backpack had been found in the Holland home. The fact that the backpack was not seen in a photograph of the couch that was taken by law enforcement does not establish that it was disposed of by defendant. Because the prosecutor made an argument that was not supported by the evidence, defendant has established plain error.

Nonetheless, defendant is not entitled to relief. The trial court instructed the members of the jury during the preliminary instructions that they were to "decide th[e] case based solely on the evidence," which did not include the attorney's arguments. Immediately before closing arguments, the trial court stated: "I will remind you folks [that] closing arguments are not evidence." After closing arguments, the trial court instructed the jury that the verdict had to be based on the evidence and that the attorneys' arguments were not evidence. Accordingly, the members of the jury were instructed multiple times that they were to base their verdict on the evidence presented at trial. "It is axiomatic that jurors are presumed to have followed their instructions." *People v Gayheart*, 285 Mich App 202, 210; 776 NW2d 330 (2009). Moreover, given the evidence in this case, there is no basis to conclude that the prosecutor's error resulted in the conviction of an actually innocent defendant or that the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings. Consequently, defendant is not entitled to relief under plain-error review.

Defendant next argues that the prosecutor misstated the law during closing argument. Because trial counsel objected and requested a curative instruction, this argument is preserved. See *Unger*, 278 Mich App at 234-235.

---

[7] Defendant testified that he did not want to look in the cardboard box.

During closing arguments, trial counsel argued that defendant promptly took Jared to the police station after he learned of the crimes, but that the police failed to act. During rebuttal, the prosecutor stated:

> Lieutenant Merrill had no authority to detain Jared or the defendant, and the defendant knew it. . . . He knew there was nothing that [the Grand Rapids Police Department] could do when they went in for a total of 100 seconds.
>
> And the moment that he left [the Grand Rapids Police Department], he had a choice to make—the defendant did. *And that choice is do I turn this evidence over, which I'm obligated to do*, or do I get in the car and take this evidence back to my son's house, and give it back to him so that he can continue to get rid of this. [Emphasis added.]

It is undisputed that defendant did not have a legal obligation to turn over the evidence to law enforcement when he was at the police station and that defendant's failure to turn over the evidence did not in and of itself establish that he was an accessory after the fact. To the extent that the prosecutor may have misstated the law, a defendant is only entitled to a new trial under such circumstances if the misstatement "remains uncorrected. . . ." *People v Grayer*, 252 Mich App 349, 357; 651 NW2d 818 (2002). Indeed, "if the jury is correctly instructed on the law, an erroneous legal argument made by the prosecutor can potentially be cured." *Id*. In this case, there is no argument that the trial court's instructions on the elements of accessory after the fact were erroneous, and the jury was instructed that "Michigan law does not require a person who is merely aware of a crime to report that crime to law enforcement officials." As already stated, "[i]t is axiomatic that jurors are presumed to have followed their instructions." *Gayheart*, 285 Mich App at 210.[8]

Additionally, the prosecutor's challenged statement was isolated and brief. And the prosecutor stated that defendant had no "legal obligation to report th[e] crime," but that defendant was not permitted to "dispose of evidence back to a crime scene, back to the sole possession of Jared." This argument is consistent with the law and did not imply that defendant had an obligation to turn over the evidence to the police. Defense counsel similarly argued that defendant was not obligated to report what Jared had told him:

> And yet, [defendant] has the courage . . . to take his son to the police department. He doesn't have to. The judge is going to tell you, the prosecutor has told you, he doesn't have to. Jared could tell him that horrible thing, and he could just say, all right, and be done with it.
>
> Because he doesn't have to tell anybody what Jared told him. But, he does it because he's a human being, and he has compassion.

Additionally, as already discussed, the jury was instructed on multiple occasions that the attorneys' arguments do not constitute evidence. Given that the prosecutor's misstatement was

---

[8] To the extent that defendant disputes the instructions given by the trial court, that argument is waived.

brief, given the other accurate arguments from both sides about defendant's obligations under the law, and given the trial court's instructions, we conclude that defendant is not entitled to relief.

## V. ASSISTANCE OF COUNSEL

Defendant argues that he was denied effective assistance of counsel when counsel failed to object to the prosecutor's argument that defendant had disposed of Jared's backpack. We disagree that defendant is entitled to relief.

Defendant failed to raise an ineffective assistance of counsel claim in the trial court in connection with a motion for a new trial or a motion to remand. Therefore, our "review is limited to mistakes apparent from the record." *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). To prevail on a claim of ineffective assistance of counsel, a defendant "must establish (1) the performance of his [or her] counsel was below an objective standard of reasonableness under prevailing professional norms and (2) a reasonable probability exists that, in the absence of counsel's unprofessional errors, the outcome of the proceedings would have been different." *People v Sabin (On Second Remand)*, 242 Mich App 656, 659; 620 NW2d 19 (2000).

Even if we were to assume that trial counsel's failure to object to the prosecutor's argument about the backpack may have fallen below an objective standard of reasonableness, we conclude that defendant is not entitled to relief. Indeed, given the overwhelming evidence of guilt in this case, there is not a reasonable probability that the outcome of the proceeding would have been different had counsel objected. Therefore, defendant is not entitled to relief on his ineffective assistance of counsel claim.

## VI. CUMULATIVE ERROR

Finally, defendant argues that he is entitled to a new trial under the cumulative-error theory. However, because defendant only identified harmless errors, we conclude that he is not entitled to relief. See *People v Ackerman*, 257 Mich App 434, 454; 669 NW2d 818 (2003).

Affirmed.

/s/ Thomas C. Cameron
/s/ Mark J. Cavanagh
/s/ Michael F. Gadola